IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| RANDY LARSON AND RUSSELL MORRISON, on behalf of themselves and all persons similarly situated, | CV 23-126-M-DLC-KLD |
| Plaintiffs, | |
| vs. | FINDINGS AND RECOMMENDATION |
| BLAINE C. BRADSHAW and GRANITE COUNTY, | |
| Defendants. | |

This matter comes before the Court on Defendants Blaine C. Bradshaw and Granite County's motion to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 4). For the reasons discussed below, the Court recommends that Defendants' motion be denied in part and granted in part.

I.    **Background**[1]

Plaintiffs Randy Larson and Russell Morrison are both residents of Granite County, Montana. (Doc. 1, at ¶¶ 1-2). They have brought various claims in this case against Defendants Blaine C. Bradshaw ("Bradshaw") and Granite County.

---

[1] Consistent with the legal standards applicable to Rule 12(b)(6) motions, the following facts are taken from the Complaint.

Bradshaw serves as the county attorney for Granite County. (Doc. 1, at ¶ 8). In that capacity, he brought criminal charges against both Morrison and Larson and was involved with proceedings against them. (Doc. 1, at 2-3).

Bradshaw filed a criminal complaint charging Morrison with disorderly conduct on July 12, 2021. (Doc. 1, at ¶17). This charge stems from Morrison's actions on May 11, 2021, when he made an offensive hand gesture directed at a home near a gate leading to his property. (Doc. 1, at ¶ 14). Morrison's gesture was observed via video by an occupant of the home, Angela DiPinto. (Doc. 1, at ¶ 15). The Granite County Justice of the Peace found Morrison guilty of the charge. (Doc. 1, ¶ 22). On review, the state District Court later dismissed the charge. (Doc. 1, at ¶ 23).

Bradshaw filed a criminal complaint charging Larson with assault on June 1, 2021. (Doc. 1, at ¶ 26). This charge stems from an incident where Larson allegedly stated his intent to shoot another individual. (Doc. 1, at ¶¶ 24-26). The person to whom Larson made this statement reported the statement to local law enforcement. (Doc. 1, at ¶25). On July 26, 2021, Bradshaw obtained an arrest warrant against Larson. (Doc. 1, at ¶ 30). Bradshaw and Granite County subsequently dismissed the charge against Larson. (Doc. 1, at ¶ 31).

Plaintiffs allege that in each instance Bradshaw and Granite County lacked probable cause for the charges they brought against Plaintiffs. (Doc. 1, at ¶¶ 20, 29,

33). Additionally, in each instance Bradshaw and Granite County made an offer to dismiss the charges in exchange for a $100 fine. (Doc. 1, at 2, ¶¶ 20, 30). Plaintiffs assert that this offer was common practice for the Defendants. (Doc. 1, at ¶¶ 31, 33).

Plaintiffs filed their Complaint in this matter on October 20, 2023. (Doc. 1, at 27). The Complaint includes nine counts against Bradshaw and Granite County. Plaintiffs allege claims against Bradshaw for violations of Plaintiffs' First, Fourth, and Fourteenth Amendment rights under 42 U.S.C § 1983. (Doc. 1, at ¶¶ 42-54, 55-70, 71-86). Plaintiffs separately allege claims against Granite County for the same rights violations. (Doc. 1, at ¶¶ 87-96, 97-106, 107-117). Plaintiffs also allege claims against both Defendants for malicious prosecution, without specifying whether those claims are based on state or federal law. (Doc. 1, at ¶¶ 118-128). Finally, Plaintiffs allege claims against both Defendants for violations of their rights under Sections 4 and 17 of the Montana Constitution. (Doc. 1, at ¶¶ 129-132, 133-135).

Defendants filed a motion to dismiss on the grounds that Plaintiffs failed to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 4).

## II.   <u>Legal Standard</u>

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A cause of action

may be dismissed under Fed. R. Civ. P. 12(b)(6) either when it asserts a legal theory that is not cognizable as a matter of law, or if it fails to allege sufficient facts to support an otherwise cognizable legal claim. *SmileCare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996). When reviewing a Rule 12(b)(6) motion to dismiss, the court is to accept all factual allegations in the complaint as true and construe the pleading in the light most favorable to the nonmoving party. *Hospital Bldg. Co. v. Trustees of the Rex Hospital*, 425 U.S. 738, 740 (1976); *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir. 1989).

The court's review under Rule 12(b)(6) is informed by the provision of Fed. R. Civ. P. 8(a)(2) which requires that "a pleading must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

To withstand a motion to dismiss under Rule 12(b)(6), "the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Lazy Y*

*Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). This means that the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The facts alleged must be sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). The *Twombly/Iqbal* plausibility standard is not "akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

### III.   <u>Discussion</u>

Defendants maintain Plaintiffs fail to state a claim for relief because (1) absolute and qualified immunity protect Bradshaw from civil liability, (2) Morrison's claims against Granite County are untimely, and (3) Granite County cannot be held liable for Bradshaw's conduct as county attorney. To support their argument that Morrison's claims against Granite County are untimely, Defendants have attached to their motion to dismiss two documents: an email from counsel for Morrison to Bradshaw (Doc. 5-1) and a letter from the Board of County Commissioners of Granite County to counsel for Morrison (Doc. 5-2). Defendants have asked the court to take judicial notice of these documents.

In response, Plaintiffs maintain that Bradshaw's conduct is subject to neither absolute immunity nor qualified immunity. Plaintiffs also argue that the documents supporting Defendants' timeliness defense are not appropriate for judicial notice and that therefore their inclusion with Defendants' motion to dismiss warrants the conversion of the motion into a motion for summary judgment. Beyond the allegations in their complaint, Plaintiffs do not directly address the argument that Granite County cannot be held liable for Bradshaw's conduct.

### A.    Claims Against Bradshaw

Prosecutors are entitled to absolute immunity from claims under § 1983 for damages arising from their quasi-judicial actions, as long as those acts are performed within the scope of their authority. *See Ashelman v. Pope*, 793 F.2d 1072, 1075, 1078 (9th Cir. 1986). A prosecutor is entitled to absolute immunity from a § 1983 action when performing a function that is "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Absolute immunity is "necessary to assure that [the attorney] can perform her functions without harassment or intimidation." *Dorsey v. Orloff*, 1997 WL 85016, at *3 (N.D. Cal. Feb. 24, 1997) (citing *Fry v. Melaragno*, 939 F.3d 832, 837 (9th Cir. 1991) (citation omitted)). "The touchstone of prosecutorial immunity is whether the attorney's actions are 'intimately' or 'closely' associated with the judicial process—pre-, post-, or during litigation." *Dorsey*, 1997 WL 85016, at *3

(citing *Fry*, 939 F.2d at 837 and *Demery v. Kupperman*, 735 F.2d 1139, 1144 (9th Cir. 1984)).

Prosecutorial immunity extends to the failure to investigate prior to filing charges, the process of plea bargaining, the suppression of material evidence at trial, and the preparation and filing of an arrest warrant. *Broam v. Bogan*, 320 F.3d 1023, 1029 (9th Cir. 2003); *Briley v. California,* 564 F.2d 849, 856 (9th Cir. 1977); *Genzler v. Longanbach*, 410 F.3d 630, 637 (9th Cir. 2005) (citing *Imbler,* 424 U.S. at 430); *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997).

However, prosecutors are not entitled to absolute immunity for acts that are either outside the scope of their authority or are not quasi-judicial in nature. For instance, a prosecutor is not shielded by absolute immunity when they perform "administrative functions or 'investigative functions normally performed by a detective or police officer.'" *Genzler,* 410 F.3d at 636 (quoting *Kalina,* 522 U.S. at 126). Similarly, a prosecutor is not shielded by absolute immunity when they act as a complaining witness in obtaining an arrest warrant. *Kalina*, 522 U.S. at 131; *Morley v. Walker*, 175 F.3d 756, 760 (9th Cir. 1999).

Where civil claims against prosecutors arise under state law, the laws of that state govern the available immunities. *See generally Cousins v. Lockyear,* 568 F.3d 1063 (9th Cir. 2009)*.* The United States District Court for the District of Montana has interpreted the holdings of the Montana Supreme Court to indicate that

Montana's prosecutorial immunity is "coextensive" with federal prosecutorial immunity. *Brothers v. Monaco*, 363 F. Supp. 3d 1138, 1145 (D. Mont. 2019) (referencing *Renenger v. State*, 426 P.3d 559, 564–67 (Mont. 2018)).

Plaintiffs allege Bradshaw is not entitled to absolute immunity because, at times, he acted outside his role as a prosecutor. In support, Plaintiffs allege numerous bad acts by Bradshaw. However, many of these alleged acts appear unconnected to the causes of action described in the Complaint. Instead, these alleged acts would demonstrate only that Bradshaw at times acted outside his role as a prosecutor and outside the bounds of absolute immunity, but not in relation to the claims brought in this case. Plaintiffs seem to argue that *none* of Bradshaw's conduct is shielded by absolute immunity simply because *some* of his conduct was outside his role as a prosecutor. "Once the prosecutor here acts either illegally, or in an unreasonable manner not intimately connected with the judicial phase of the criminal process, the immunity shield is removed." (Doc. 13, at 2).

The Complaint describes numerous actions that do not support the allegations that Bradshaw violated Defendants' rights. For instance, in Count I, Plaintiffs allege that Bradshaw "deprived [Defendants] of their First Amendment rights to free speech, by charging them with misdemeanors for non-criminal speech." (Doc. 1, at ¶50). This language makes clear that the alleged deprivation was caused by Bradshaw's charging decision. Yet, in that same count Plaintiffs also

8

allege that Bradshaw "went outside of the protections of absolute prosecutorial immunity when he acted as an investigator and gave direction to the police during a criminal investigation . . . ." (Doc. 1, at ¶ 46). While it may be true that Bradshaw might not have had absolute immunity when giving directions to the police, that alleged conduct appears unrelated to the deprivation at issue. Plaintiffs do not explain how giving direction to the police might have contributed to the free speech violation.

Absolute immunity is not lost for all subsequent actions simply because a prosecutor takes some actions that are not protected by absolute immunity. In *Kalina*, the Supreme Court held that the prosecutor in that case was shielded by absolute immunity for preparing and filing an information and motion for an arrest warrant, but not for swearing to evidence in support of the warrant. 522 U.S. at 129; *see also Burns v. Reed*, 500 U.S. 478, 492, 496 (absolute immunity for presenting evidence in court to support search warrant but no absolute immunity for giving advice to police). Therefore, whether Bradshaw acted at times outside his prosecutorial role is relevant only if those actions support a theory of liability.

Examining the Complaint, the list of alleged actions that might support liability under the various counts include charging Plaintiffs without probable cause (Doc. 1, at ¶¶ 20, 29, 33, 37, 82, 91, 101, 111, 113, 123, 124, 129); charging Plaintiffs before law enforcement could conduct an independent investigation

(Doc. 1, at ¶¶ 46, 48, 59, 60, 75, 76); charging Plaintiffs before the sheriff's office was able to submit an independent charging decision (Doc. 1, at ¶ 47); extending offers to resolve cases for a fine (Doc. 1, at ¶¶ 20, 31, 33, 37, 41); failing to promptly disclose additional evidence (Doc. 1, at ¶¶ 63, 79); failing to provide exculpatory evidence (Doc. 1, at ¶¶ 62, 78); and having an arrest warrant issued for Larson (Doc. 1, ¶¶ 30, 49, 61, 65, 77, 102).

As alleged, most of these actions fall squarely within the bounds of absolute prosecutorial immunity. The decision whether to file charges is shielded by absolute immunity. *Poppell v. San Diego*, 149 F.3d 951, 962 (citing *United States v. Doe,* 125 F.3d 1249, 1254 (9th Cir. 1997), *cert. denied,* 522 U.S. 1138 (1998)). Therefore, even if Bradshaw lacked probable cause or charged Plaintiffs in the absence of procedurally appropriate investigations, he is absolutely immune for filing charges. Similarly, Bradshaw's alleged offers to resolve charges are protected as conduct associated with his role as a prosecutor engaged in the judicial process. *Briley*, 564 F.2d at 856. Finally, Bradshaw's alleged conduct involving the failure to provide and disclose evidence falls within the bounds of absolute immunity. *Genzler*, 410 F.3d at 637 (citing *Imbler,* 424 U.S. at 430).

Of all the legally significant actions Bradshaw may have taken, only his alleged conduct in obtaining an arrest warrant requires further scrutiny. In *Kalina*, the Supreme Court held that, in securing an arrest warrant, some actions are

uniquely prosecutorial in nature while others are not. In that case, a Washington state prosecutor did not enjoy prosecutorial immunity when they acted as a complaining witness in the process of obtaining an arrest warrant. *Kalina,* 522 U.S. at 131. When the prosecutor swore to a supporting affidavit, they "performed an act that any competent witness might have performed." *Kalina*, 522 U.S. at 129-30. Although Washington law required the affidavit, there was no requirement that it be signed by a prosecutor. *Kalina*, 522 U.S. at 129-30.

Lower courts have since applied this distinction, delineating where a prosecutor acts as an advocate and where they act as a complaining witness. In *Humble v. County of Missoula*, the court found no absolute immunity where a deputy county attorney signed a petition for commitment, setting forth and attesting to facts supporting the request. 2010 WL 2360551, at *4 (D. Mont. June 9, 2010). Similarly, in *Garmon v. County of Los Angeles,* the Ninth Circuit found prosecutorial immunity for the act of issuing a subpoena duces tecum, but not for a declaration in support of the subpoena. 828 F.3d 837, 845 (9th Cir. 2016); *see also Cruz v. Kauai County,* 279 F.3d 1064, 1067 (9th Cir. 2002) (no prosecutorial immunity for swearing to facts in support of motion to revoke bail).

In contrast, decisions such as *Orth v. Balaam* underscore the narrowness of the *Kalina* holding. "[P]rosecutors are entitled to absolute immunity for their actions in procuring a warrant, so long as they do not act as attesting witnesses."

11

528 F. App'x 723, 725–26 (9th Cir. 2013); *see also Doran v. Smith*, 2019 WL

3718598, at *3 (D. Mont. Aug. 7, 2019) (prosecutor shielded by absolute immunity

because they did not "personally vouch for the truth of the facts set forth in the

motion under penalty of perjury").

Here, the Complaint does not allege facts that plausibly support the theory

that Bradshaw acted in a capacity akin to a complaining witness in the process of

securing a warrant for Larson's arrest. The Complaint alleges that Bradshaw was

"listed as the investigating officer on Larson's arrest warrant." (Doc. 1, at ¶¶ 49,

61, 77). Plaintiffs further allege that Bradshaw "deprived Larson, as well as the

Putative Class, of their Fourth Amendment rights to be free from search and

seizure by having an arrest warrant issued and enforced." (Doc. 1, at ¶ 65).

As in *Kalina,* much of Bradshaw's conduct in causing an arrest warrant to be

issued undoubtedly falls within the bounds of prosecutorial immunity. *Kalina,* 522

U.S. 118. Unlike the facts in *Kalina*, the Complaint does not indicate that

Bradshaw swore an oath or otherwise took steps outside his prosecutorial role in

obtaining Larson's arrest warrant. The allegations that Bradshaw "was listed" as an

"investigating officer" on the arrest warrant do not establish conduct that any

complaining witness might have taken. (Doc. 1, at ¶¶ 49, 61, 77). These facts are

insufficient to bring Plaintiffs' claim within *Kalina*'s holding. Accordingly,

Bradshaw is entitled to absolute immunity for his actions relating to the warrant for Larson's arrest.

Bradshaw is shielded by absolute immunity for all actions that would otherwise support Plaintiffs' claims. Defendants also argue that Bradshaw is shielded by qualified immunity. It is not necessary to address these arguments, given Bradshaw's absolute immunity to civil liability under the facts alleged. For these reasons, Plaintiffs have failed to state a claim against Bradshaw upon which relief can be granted.

### B.   Claims against Granite County

### 1.   Municipal Liability and Immunity

Plaintiffs allege six claims against Granite County: Counts 4, 5 and 6 mirror the § 1983 claims brought against Bradshaw individually, Count 7 alleges malicious prosecution, and Count 8 and 9 allege violations of the Montana Constitution's equal protection and due process provisions. The Court will discuss each in turn.

A municipality is considered a "person" under § 1983 and may be sued for causing a constitutional deprivation. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978). "A municipality cannot, however, 'be held liable under § 1983 on a respondeat superior theory.'" *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002) (quoting *Monell*, 436 U.S. at

691). Rather, liability attaches "only where the municipality itself causes the constitutional violation through 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Ulrich*, 308 F.3d at 984 (quoting *Monell*, 436 U.S. at 694).

To state a claim against a municipality under § 1983, plaintiffs must allege that: (1) they were deprived of a constitutional right; (2) the municipality had a policy, custom, or practice; (3) the policy, custom or practice amounted to deliberate indifference to the plaintiffs' constitutional rights; and (4) the policy, custom or practice was the moving force behind the constitutional violation. *See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011); *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).

States are shielded by a broad and inherent sovereign immunity. *See Seminole Tribe of Florida. v. Florida*, 517 U.S. 44, 54, (1996) (citing *Hans v. Louisiana,* 134 U.S. 1, (1890)). Municipalities have no such inherent immunity under federal law. *Ray v. County of Los Angeles,* 935 F.3d 703, 708 (9th Cir. 2019). However, Montana has "extended the doctrine of prosecutorial immunity to include county and state governments employing the prosecutors who find themselves named defendants in tort actions." *Rosenthal v. County of Madison*, 170 P.3d 493, 498 (Mont. 2007) (citing *Ronek v. Gallatin County,* 740 P.2d 1115,

1117 (Mont. 1987); *Koppen v. Board of Medical Examiners,* 759 P.2d 173, 176 (Mont. 1988)). Therefore, Montana counties hold the same absolute immunity from claims brought under state law as do individual prosecutors.

Given Montana's extension of prosecutorial immunity to municipalities, it follows that Granite County should be subject to the same prosecutorial immunity that shields Bradshaw from claims under Montana law. The Complaint alleges state-law causes of action against Granite County in Counts 8 and 9. Prosecutorial immunity shields Bradshaw from liability for these claims. Plaintiffs have not alleged facts to show actions by Granite County separate from Bradshaw's conduct. Therefore, Granite County is shielded by absolute immunity for these claims. Counts 8 and 9 should be dismissed for failure to state a claim upon which relief can be granted.

Count 7 alleges malicious prosecution against Bradshaw and the County. Malicious prosecution is a common-law tort, recognized under Montana law. *C.f. Plouffe v. Mont. Dep't of Pub. Health & Hum. Servs.*, 45 P.3d 10 (Mont. 2002). Malicious prosecution may also be brought as a federal constitutional tort under § 1983. *C.f. Awabdy v. City of Adelanto*, 368 F.3d 1062 (9th Cir. 2004). Plaintiffs do not distinguish which cause of action they are alleging. Because absolute immunity covers Bradshaw's conduct as it relates to this count, Granite County is immune from prosecution for malicious prosecution as a state-law claim. Therefore, as it

relates to Granite County, Count 7 should be dismissed for failure to state a claim upon which relief can be granted, but only to the extent that it makes a claim under state law.

Counts 4, 5, and 6 are all brought against Granite County under § 1983. Plaintiffs allege Granite County either ratified Bradshaw's conduct or willfully disregarded its duty to exercise oversight and control of Bradshaw. Taking these facts as true for the purpose of this motion, as the Court must, Plaintiffs have met their burden of alleging facts stating a claim. These counts are not affected by Granite County's state-law prosecutorial immunity and should not be dismissed on these grounds. Similarly, to the extent that Count 7 can be construed as a federal claim against Granite County, that count is also unaffected by Granite County's state-law prosecutorial immunity and should not be dismissed on these grounds.

### 2. Remaining County Arguments

Granite County argues Morrison did not file his Complaint within the applicable statute of limitations. When considering claims under § 1983, federal courts generally apply the personal injury statute of limitations from the state where the cause of action arose. *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) (citing *Fink v. Shedler,* 192 F.3d 911, 914 (9th Cir.1999)). However, Montana law provides a specific limitation period for claims against a county. "Actions for claims against a county that have been rejected by the county commissioners must

be commenced within 6 months after the first rejection." Mont. Code Ann. § 27-2-209(3). The United States District Court for the District of Montana has previously applied this limitation period in cases brought under § 1983. *E.g., Est. of Ostby v. Yellowstone County*, 2020 WL 4732054, at *3 (D. Mont. Aug. 14, 2020).

In support of their timeliness argument, Granite County requests that the Court take judicial notice of two documents. The first document is an email from counsel for Morrison to Bradshaw. (Doc. 5-1). The second document is a letter from the Board of County Commissioners of Granite County to counsel for Morrison. (Doc. 5-2). Granite County maintains these documents show that (1) Morrison made a claim against Granite County on October 11, 2022; and (2) Granite County denied Morrison's claim on October 25, 2022. Under Granite County's theory, these facts establish that Morrison's claims in the case at hand are barred because they were brought later than six months after October 22, 2022, in violation of MCA § 27-2-209(3).

As a general rule, a district court may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6). *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). When matters outside the pleadings are considered, the motion to dismiss under Rule 12(b)(6) is treated

as one for summary judgment under Rule 56. See *Khoja*, 899 F.3d at 998; *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 921–22 (9th Cir. 2004).

There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201. *Khoja*, 899 F.3d at 998 (explaining the two exceptions). The incorporation-by-reference doctrine allows a court to consider evidence on which the complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

A court may take judicial notice of undisputed "matters of public record," including other state or federal court proceedings, *Lee*, 250 F.3d at 688–89; *Duckett v. Godinez*, 67 F.3d 734, 741 (9th Cir. 1995), as well as facts that are "not subject to reasonable dispute" because they are either "generally known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); Fed. R. Evid. 201(b). Courts may also take judicial notice of "records and reports of administrative bodies." *Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (citing *Interstate Nat. Gas Co. v. S. Cal. Gas. Co.*, 209 F.2d 380, 385 (9th Cir. 1953)).

Here, the documents fit neither exception. First, the Complaint makes no mention of an email from counsel for Morrison, nor a letter from the Board of County Commissioners of Granite County. Therefore, the incorporation by reference exception is not met. Second, Granite County has not sufficiently demonstrated that the attached documents are proper for consideration under judicial notice. The accuracy of the documents is not readily apparent based on the information supplied by Granite County. Similarly, it is not clear that the documents are public records. Therefore, judicial notice is not proper under Federal Rule of Evidence 201.

Plaintiffs argue that, because the exhibits cannot be properly taken under judicial notice, Granite County's motion to dismiss should be converted into a motion for summary judgment. Granite County has also asked to convert the motion to dismiss to a summary judgment motion if the Court does not take judicial notice of the documents. Because the Court cannot take judicial notice of disputed facts in the attached documents and the Court has not considered the contents of those documents in its decision, it is unnecessary to convert Granite County's motion to dismiss into a motion for summary judgement.

Granite County's final argument for dismissing Plaintiffs' claims against it depends on whether a county prosecutor acts on behalf of the state or the county. In support, Granite County simply offers "[i]t is axiomatic that, in his capacity as a

prosecutor, Bradshaw was acting on behalf of the State of Montana." Whether or not Bradshaw was acting on behalf of the state, his status is less than axiomatic.

In determining whether a prosecutor acts on behalf of the state or municipality, the Ninth Circuit has held that the answer depends "on a careful and thorough analysis of state constitutional and statutory provisions, and will vary 'from region to region, and from State to State.'" *Goldstein v. City of Long Beach*, 715 F.3d 750, 760 (9th Cir. 2013) (quoting *McMillian v. Monroe County,* 520 U.S. 781, 795, (1997)); *see also Botello v. Gammick*, 413 F.3d 971, 979 (9th Cir. 2005). Even the Montana Supreme Court has described this same question as a "thorny problem." *Ronek,* 740 P.2d at 1116–17 (Mont. 1987).

Although Plaintiffs do not address Granite County's assertion that Bradshaw's prosecutorial actions were taken on behalf of the state, Granite County's characterization cannot be accepted as grounds for dismissal. While it may seem obvious to Granite County, it has not provided the Court any legal basis for the determination that a county attorney acts solely on behalf of the state. Therefore, Plaintiffs' claims against Granite County should not be dismissed on these grounds.

## IV.   <u>Conclusion</u>

For the reasons discussed above,

IT IS RECOMMENDED that Defendants Bradshaw and Granite County's Rule 12(b)(6) Motion to Dismiss (Doc. 4) be DENIED IN PART and GRANTED IN PART as follows:

    A. Blaine C. Bradshaw's motion to dismiss should be GRANTED in its entirety;

    B. Granite County's motion to dismiss should be GRANTED as to Counts 8 and 9, GRANTED as to Count 7 of the Complaint to the extent that it involves a cause of action under Montana state law against Granite County; and DENIED as to all other counts.

//

//

//

//

//

//

//

//

//

//

//

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 30th day of September, 2024.

Kathleen L. DeSoto

United States Magistrate Judge